**KEYSTONE RETAINING WALL SYSTEMS, INC., Plaintiff–Appellant,**

v.

**WESTROCK, INC., f/k/a Smithwick Western Block Company and Smithrock Block Company; Pumilite Salem, Inc.; Westblock Products, Inc., d/b/a Western Block Company and SNH Corporation, d/b/a Pumilite Building Products, Defendants–Appellees.**

No. 92–1265.

United States Court of Appeals, Federal Circuit.

June 29, 1993.

Rehearing Denied Aug. 4, 1993.

Craig D. Diviney, Dorsey & Whitney, Minneapolis, MN, argued for plaintiff-appellant. With him on the brief was Ronald J. Brown.

John D. Vandenberg, Klarquist, Sparkman, Campbell, Leigh & Whinston, Portland, OR, argued for defendants-appellees. With him on the brief was James S. Leigh.

Before NEWMAN, PLAGER, and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

KeyStone Retaining Wall Systems, Inc. appeals the judgment of the United States District Court for the District of Oregon, Civil No. 91–0021–RE (December 11, 1991), entered on a jury verdict, holding, *inter alia*, that Westrock, Inc., f/k/a Smithwick Western Block Company and Smithrock Block Company; Pumilite Salem, Inc.; Westblock Products, Inc., d/b/a Western Block Company; and SNH Corporation, d/b/a Pumilite Building Products (collectively Westblock) did not infringe KeyStone's trade dress rights. Key-Stone also appeals the court's grant of Westblock's motions for partial summary judgment, holding, *inter alia*, that U.S. Patent 4,914,876 was invalid under 35 U.S.C. § 102(b) (1988) and that U.S. Patent Des. 298,463 was not infringed by Westblock. *KeyStone Retaining Wall Sys. Inc. v. Westrock, Inc.*, 792 F.Supp. 1552, 22 USPQ2d 1001 (D.Or.1991). We reverse the order granting summary judgment of invalidity of the '876 patent, affirm the judgment in all

other respects, and remand to the district court for further proceedings.

## BACKGROUND

The '876 patent, entitled "Retaining Wall with Flexible Mechanical Soil Stabilizing Sheet," issued to Paul Forsberg and was assigned to KeyStone. The claimed invention relates to a retaining wall structure made from a plurality of interlocked wall blocks, in which soil stabilizing (geo-grid) fabric[1] is connected to the wall structure by means of pins that interconnect and align the blocks. The '876 patent issued from a continuation application and claims the priority date of May 26, 1987, the filing date of its parent application. Forsberg also invented and assigned to KeyStone several ornamental designs for retaining wall blocks, including the design claimed in the '463 patent, a design for a retaining wall having a tapered design with two voids, wherein the front of the block has a convex "split face" look with a naturally textured curved or slightly angled face, as shown below as Figure 9 of the patent.

*Fig. 9*

KeyStone and Westblock are competitors in the mortarless retaining wall industry. Westblock manufactures a retaining wall system made of "Stonewall" blocks. The Stonewall system uses an interlocking pin system and the blocks have textured convex split front faces. A Stonewall block is depicted as follows:

---

1. Geo-grid is a high strength geotextile laid out      in mats to reinforce a soil mass.

In January 1991, KeyStone asserted claims of patent, trade dress, and copyright infringement; unlawful trade practice; and unfair competition. Westblock counterclaimed for interference with contract; unlawful trade practice and unfair competition; antitrust violation; and patent invalidity.

Prior to trial, Westblock filed motions for partial summary judgment, including summary judgment of noninfringement of KeyStone's design patents. On July 10, 1991, in an initial opinion, the district court denied the motion with respect to the '463 patent, finding that the Stonewall block creates a likelihood of confusion with KeyStone's '463 patent design, and granted the motion as to the other design patents in suit, determining that the accused design and the design of the patents in suit were not substantially similar and that an ordinary observer could easily tell them apart. On August 30, 1991, the court issued an amended opinion, partially reversing itself by granting Westblock's summary judgment motion of noninfringement of all of KeyStone's design patents in suit.

In a separate motion, Westblock moved, *inter alia*, for partial summary judgment of patent invalidity of the '876 patent, contending that its subject matter was placed "on sale" under section 102(b) prior to the May 26, 1986 critical date. On October 7, 1991, the court granted Westblock's motion.

The remaining claims, limited to Lanham Act violations and copyright infringement, were tried before a jury. In November 1991, the jury returned a verdict finding, *inter alia*, that Westblock did not infringe Key-Stone's trade dress rights.[2] Specifically, the jury found that KeyStone's facade design, for which it claimed trade dress protection, was not "nonfunctional," had not acquired secondary meaning, and was not likely to be confused with the Stonewall facade design. On December 11, 1991, the court thus dismissed with prejudice KeyStone's claims for violation of its rights under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1988). KeyStone moved for a new trial based on alleged errors relating to the trial of its trade dress claim, and the court denied the motion.

KeyStone now appeals the judgment of lack of trade dress infringement which was entered after denying KeyStone's motion for a new trial, the grant of summary judgment of noninfringement of the '463 design patent, and the grant of summary judgment of invalidity of the '876 patent.

## DISCUSSION

### I. Trade Dress Infringement

KeyStone argues that the court incorrectly instructed the jury regarding the issue of functionality and excluded probative evidence relating to actual confusion and copying. Thus, according to KeyStone, it is entitled to a new trial. In reviewing claims involving trade dress infringement under section 43(a) of the Lanham Act, we look to the law of the regional circuit. *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1439, 223 USPQ 1074, 1087 (Fed.Cir.1984) (in banc) (applying law of regional circuit to "all but

---

**2.** The jury returned a verdict in favor of Key-Stone on its copyright claim, but found for West-block on each of the other claims in issue.

the substantive law fields assigned exclusively to this court"). Under Ninth Circuit law, to prevail on a trade dress claim, KeyStone had to show that the asserted trade dress was not functional, had acquired secondary meaning,[3] and was likely to be confused with Westblock's Stonewall blocks. *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842, 4 USPQ2d 1026, 1029 (9th Cir.1987). On appeal, KeyStone must demonstrate error as to each of the relevant elements of its trade dress claim.

■ The standard of review of jury instructions in the Ninth Circuit is prejudicial error. *Smiddy v. Varney*, 665 F.2d 261, 265 (9th Cir.1981), *cert. denied*, 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). In the Ninth Circuit, no prejudicial error exists if, "considering the charge as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." *Thorsted v. Kelly*, 858 F.2d 571, 573 (9th Cir.1988) (citation omitted). Thus, on appeal, KeyStone must show that the jury instructions as a whole were so incorrect as to mislead the jury.

■ According to KeyStone, the trial court misled the jury on the issue of functionality by incorrectly defining the issue as to whether the facade of a KeyStone wall was functional. The court instructed the jury as follows:

A product feature is functional if it is essential to the product's use or if it affects the cost or quality of the product. Functional features of a product are not entitled to trade dress protection.

Here you must determine if the design of the facade of a KeyStone wall is functional or nonfunctional.

In making this determination, you must consider the design as a whole and must not focus on isolated elements of the design. Your inquiry is not whether the KeyStone wall unit or walls made up of them have functional elements but rather whether the elements of the design of the facade of a KeyStone wall, taken together, are functional.

Similarly, your inquiry should not stop at the usefulness of a KeyStone wall overall, but rather must focus on the functionality or nonfunctionality of the design of the KeyStone wall's facade.

In assessing the functionality or nonfunctionality of the design you must consider the following factors:

1. The existence of utility patents disclosing utilitarian advantages of the design;

2. The extent of advertising touting utilitarian advantages of the design;

3. The availability of alternative designs;

4. Whether the design results from a comparatively simple or cheap method of manufacture.

*Where the appearance of a product is essential to its intended use, the appearance may itself be functional.*

(Emphasis added). At trial, KeyStone objected to that part of the instruction stating that "Where the appearance of a product is essential to its intended use, the appearance may itself be functional." KeyStone stated that this instruction was incomplete and misleading, and suggested its own instruction. With the instruction as given, the jury found the KeyStone facade not to be "nonfunctional."

■ Reading the instruction as a whole, we cannot say that the jury was misled. KeyStone argues that the instruction incorrectly defined the issue concerning whether the KeyStone facade was functional. We disagree. It is certainly true that only nonfunctional product features may receive trade dress protection, *Two Pesos Inc. v. Taco Cabana Inc.*, —— U.S. ——, ——, 112 S.Ct. 2753, 2758, 120 L.Ed.2d 615, 625, 23 USPQ2d 1081, 1084 (1992), and the jury was instructed that "[a] product feature is functional if it is essential to the product's use or if it affects the cost or quality of the product." That is

---

3. The Supreme Court recently held in *Two Pesos, Inc. v. Taco Cabana Inc.*, —— U.S. ——, ——, 112 S.Ct. 2753, 2761, 120 L.Ed.2d 615, 628, 23 USPQ2d 1081, 1086 (1992), that "proof of sec-

ondary meaning is not required to prevail on a claim under § 43(a) of the Lanham Act where the trade dress at issue is inherently distinctive."

the standard stated by the Supreme Court in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606, 214 USPQ 1, 4 n. 10 (1982) ("a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article."). The Ninth Circuit has stated the same standard for functionality in *Fuddruckers*, 826 F.2d at 842, 4 USPQ2d at 1030. Thus, the contested final sentence taken in the context of the total instruction could not have misled the jury.

KeyStone also argues that the disputed statement given to the jury stated the functionality standard applied in *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 4 USPQ2d 1877 (9th Cir.1987), and that the standards recited in *Rachel* and *Fuddruckers* are contradictory. We do not agree that the court instructed the jury according to the functionality standard of *Rachel.* In *Rachel*, the court stated that " 'unique arrangements of purely functional features constitute a functional design' not entitled as a matter of law to protection under the Lanham Act." 831 F.2d at 1506, 4 USPQ2d at 1880 (quoting *Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 977, 1 USPQ2d 2026, 2028 (2d Cir.1987)) (design and appearance of synthetic animal heads are functional because they are essential to make a realistic reproduction of various animals). The Ninth Circuit stated in *Fuddruckers* that

> [w]e examine trade dress as a whole to determine its functionality; functional elements that are separately unprotectable can be protected together as part of a trade dress. In other words, our inquiry is not addressed to whether individual elements of the trade dress fall within the definition of functional, but to whether the whole collection of elements taken together are functional.

826 F.2d at 842, 4 USPQ2d at 1030 (citations omitted). In this case, the jury was correctly instructed, according to *Fuddruckers,* to "consider the design as a whole and [ ] not focus on isolated elements of the design."

Reviewing the instruction as a whole, we conclude that the trial judge's instruction to the jury on the law of functionality was not incorrect. KeyStone erroneously singles out one sentence of the jury instruction instead of looking at the instruction as a whole. The Court's refusal to use the exact words suggested by KeyStone is no basis for a new trial. "[C]hallenges to the formulation [of jury instructions] adopted by the court are reviewed for abuse of discretion." *United States v. Beltran–Rios,* 878 F.2d 1208, 1214 (9th Cir.1989). The trial court here did not abuse its discretion in its formulation of the instruction on functionality; the instruction was not prejudicial.

Because KeyStone has not shown prejudicial error on the element of functionality, we need not address whether error existed in the jury's determination that there was no secondary meaning and no likelihood of confusion. We therefore uphold the district court's entry of judgment upholding the jury's finding that there was no trade dress infringement.

## II. Summary Judgment Motions

KeyStone asserts that the trial court erred in granting Westblock's motions for summary judgment of noninfringement of the '463 patent and invalidity of the '876 patent.

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We review these questions *de novo. Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1561, 7 USPQ2d 1548, 1551 (Fed.Cir.1988). A material fact is one that may affect the decision, whereby the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be

believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. at 2513. This court applies the same legal standard as that applied by the trial court in determining whether summary judgment was appropriate. *Imperial Van Lines Int'l, Inc. v. United States,* 821 F.2d 634, 637 (Fed.Cir. 1987).

## A. Design Patent

KeyStone argues that the court misapplied the law of design patent infringement and disregarded evidence of overall similarity in finding a lack of infringement of the '463 patent. The district court stated that

> *when placed together with other blocks, design patent '463 appears to be the same,* to the ordinary observer, *as the accused Stonewall block.* In other words, when engaged in its normal use, as a retaining wall, an ordinary observer may reasonably confuse patent '463 with defendants'· accused product.
>
> \* \* \* \* \* \*
>
> *While I have found the blocks themselves to be distinguishable* by the ordinary observer, *their use and appearance in a wall are very similar indeed.* The design of the blocks is similar, in that they both, '463 and the Stonewall block, have a split face (rough, non-uniform, creating a natural rock appearance), and look virtually identical when placed in a retaining wall. Both plaintiff and defendants have similar goods ... and similar marketing channels due to their participation in the same trade shows, and there was customer confusion evidenced in such shows.

22 USPQ2d at 1004-05 (emphasis added). The court concluded that the ornamental features of the patented block design, as opposed to their appearance imbedded in a wall, were not substantially similar to the accused design. Thus, no design patent infringement by the Stonewall blocks, either individually or when included in a retaining wall, could occur. KeyStone alleges that only the front face of the '463 block design is ornamental and it alone should have been considered for infringement purposes, since the other features are all concealed when in an assembled retaining wall. We disagree.

A design patent protects the non-functional aspects of an ornamental design as shown in a patent. *See Lee v. Dayton–Hudson Corp.,* 838 F.2d 1186, 1188–89, 5 USPQ2d 1625, 1627 (Fed.Cir.1988). "[I]t is the appearance of a design as a whole which is controlling in determining questions of patentability and infringement." *In re Rubinfield,* 270 F.2d 391, 395, 123 USPQ 210, 214 (CCPA 1959), *cert. denied,* 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554 (1960). The first aspect of the test for design patent infringement is as follows:

> [I]n the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Co. v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871); *see also Avia Group Int'l,* 853 F.2d at 1565, 7 USPQ2d at 1554. Thus, one cannot establish design patent infringement by showing similarity of only one part of a patented design if the designs as a whole are substantially dissimilar.

The test for infringement begins with an examination of the overall similarity of the patented and accused designs. A patented design is defined by the drawings in the patent, not just by one feature of the claimed design. *See Unette Corp. v. Unit Pack Co.,* 785 F.2d 1026, 1028, 228 USPQ 933, 934 (Fed.Cir.1986) ("[T]o find infringement, the accused [design] must be compared to the claimed design to determine whether the two designs are substantially the same."). The '463 design includes the entire retaining wall block, not solely the front face of the block after it has been incorporated in a retaining wall. If the claimed design were to a retaining wall, not to the whole retaining block, the inquiry would be different. Thus, the '463 patent cannot be infringed by the Stonewall blocks if they are not substantially the same as the '463 patent's claimed design.

KeyStone, in arguing that hidden features of articles are not ornamental and cannot be infringed, confuses the test for

design patent infringement with the standards for patentability. We agree that generally concealed features are not proper bases for design patent protection because their appearance cannot be a "matter of concern." *In re Stevens,* 173 F.2d 1015, 1016, 81 USPQ 362, 365–66 (CCPA 1949). On the other hand, a design for an article that is hidden in its final use may be patentable because, during some point in its life, its appearance is a "matter of concern." *In re Webb,* 916 F.2d 1553, 1557, 16 USPQ2d 1433, 1435 (Fed.Cir. 1990) (design for prosthesis patentable). However, as regards the patented block, there is no hidden portion. As a block, all parts of it are visible. When incorporated in a wall, it ceases to be visible as a block. Keystone also owns patents on wall designs, but those patents are not in issue, the only issue here being infringement of a block design.

KeyStone asserts that the court erred by substituting its own judgment for that of a jury on the issue of overall similarity. We disagree. In opposition to the motion for summary judgment, KeyStone submitted evidence that visitors to trade shows confused KeyStone's blocks with Westblock's Stonewall blocks. However, even crediting Key-Stone's evidence, it did not create a genuine issue for trial on the issue of overall similarity of the accused design with the patented *block* design because it primarily related to the unpatented wall, not the blocks. Although the blocks when aligned in a retaining wall may create a similar wall appearance, the patented design is of an individual block, not an assembled wall, and the "ordinary observer" for the purpose of the block design patent is a purchaser of the patented block, not of the unpatented wall.

KeyStone also presented evidence of actual confusion between Stonewall and KeyStone products. However, confusion as to the wall is not relevant to a finding of infringement of a patent on a block. Thus, giving the benefit of all inferences to the nonmovant, KeyStone, no reasonable juror could have found infringement of KeyStone's design patent. KeyStone incorrectly argues that the court erred in failing to analyze whether Westblock appropriated the ornamental point of novelty

of the patented design. The only issue presented in Westblock's motion for summary judgment was whether a genuine issue of material fact existed as to overall similarity. Because the court properly concluded that there was no such genuine issue, and both overall similarity and appropriation of the point of novelty are required for design patent infringement, the court did not need to address point of novelty.

Accordingly, the district court did not err in granting Westblock's motion for summary judgment of noninfringement based on the substantial differences between the accused Stonewall block design and the claimed block design of the '463 patent.

### B. *Utility Patent*

KeyStone asserts that the court erred in granting summary judgment of invalidity of the '876 patent. Specifically, KeyStone argues that a genuine issue of material fact exists regarding whether an embodiment of the claimed invention was on sale under 35 U.S.C. § 102(b) prior to May 26, 1986, the critical date.

Whether a product was placed on sale under section 102(b) is a question of law, *UMC Elecs. Co. v. United States,* 816 F.2d 647, 657, 2 USPQ2d 1465, 1472 (Fed.Cir. 1987), *cert. denied,* 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988), based upon underlying factual determinations, *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 622, 225 USPQ 634, 639 (Fed.Cir.), *cert. dismissed,* 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985). An invention may be found to have been on sale if there was a sale or offer to sell prior to the critical date. *See UMC Elecs.,* 816 F.2d at 656, 2 USPQ2d at 1472. An on sale bar determination requires that the claimed invention asserted to be on sale was operable, the complete invention claimed was embodied in or obvious in view of the device offered for sale, and the sale or offer was primarily for profit rather than for experimental purposes. *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 859–60, 226 USPQ 402, 406 (Fed.Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986). "Section 102(b) may create a bar to patentability either alone, if

the device placed on sale is an anticipation of the later claimed invention or, in conjunction with 35 U.S.C. § 103 (1988), if the claimed invention would have been obvious from the on-sale device in conjunction with the prior art." *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n,* 958 F.2d 1066, 1071, 22 USPQ2d 1025, 1028 (Fed.Cir.1992).

■■■■■ A reduction to practice of the claimed invention is not required to trigger an on sale bar. *UMC Elecs.,* 816 F.2d at 656, 2 USPQ2d at 1471. However, "[a]ll of the circumstances surrounding the sale or offer to sell, including the stage of development of the invention and the nature of the invention, must be considered and weighed against the policies underlying section 102(b)." *Id.* at 656, 2 USPQ2d at 1471–72. "If the inventor had merely a conception or was working towards development of that conception, it can be said there is not yet any 'invention' which could be placed on sale." *Id.* at 657, 2 USPQ2d at 1472.

■■■■ Westblock asserts that the '876 patent is invalid because KeyStone offered to sell a wall system incorporating pin-attached geo-grid to the city of Eagan, Minnesota in April of 1986 for use in the Lemay Lake Hills project. KeyStone agrees that it offered to sell a wall to the city of Eagan. However, KeyStone disputes that the claimed invention, which requires that geo-grid be anchored to the assembled blocks by connection pins, was on sale, and therefore contends that a material issue of fact exists as to whether the Lemay proposals incorporated the patented invention.

In April 1986, Paul Forsberg, the named inventor of the '876 patent and KeyStone's president, proposed a wall system for use on the Lemay project. The city required structural calculations and cost estimates for the KeyStone wall prior to approving construction. KeyStone retained the services of John Kliethermes, a consulting engineer, to provide engineering, design, and structural analysis of the proposed KeyStone wall system.

Forsberg testified that attaching geo-grid to retaining wall blocks with pins first occurred to him in early April 1986, after he saw a Tensar Corporation brochure advertising geo-grid. He then asked Kliethermes to determine whether the KeyStone wall system's pins would fit through Tensar geo-grid. Within a day or two, Kliethermes advised Forsberg that it would.

Kliethermes did a design analysis on the Lemay wall, which he submitted on April 18, 1986. The analysis did not explicitly state that the pins would anchor the geo-grid, but stated that "[t]he KeyStone units are attached to a soil reinforcement fabric...." This analysis was later referenced in a drawing depicting the proposed retaining wall for the Lemay project and was delivered to the engineering firm retained by the city of Eagan to build the wall. Kliethermes prepared a subsequent analysis on April 29, which did not refer to the geo-grid pin connection.

The district court stated

that the April 18 analysis contains the only explicit reference to pin-connection of the geo-grid is not significant in the context of the other evidence. The April 18 analysis is the only allusion to *any* geo-grid connection method in the pre-critical date proposals, and

it is undisputed that connection was proposed to ensure the wall's structural integrity.

792 F.Supp. at 1562, 22 USPQ2d at 1011. The court further stated that "[t]here is no evidence that any other means of connection was contemplated or proposed." *Id.*

The '876 claimed invention requires that geo-grid be anchored to the retaining wall blocks using the same pins which align and interconnect the blocks. KeyStone alleges that nothing in the April 18 analysis requires that the contemplated attachment be via the pins, but only by some means, and that the totality of the circumstances demonstrates the existence of a material factual dispute on this issue. KeyStone concludes that the trial court erred in granting summary judgment that the '876 utility patent was invalid because there is a genuine issue of material fact as to whether the claimed invention was offered for sale prior to the critical date. We agree.

KeyStone submitted evidence in opposition to the summary judgment motion showing

that the inventor, Forsberg, directed Kliethermes to perform a feasibility analysis, using geo-grid attached to the connecting pins, that Kliethermes did not believe that the pin connection was necessary, and that there were other ways to attach the geo-grid to the blocks. KeyStone submitted further evidence that nothing in the April 18 analysis required the use of pins for attaching the geo-grid; the analysis only determined whether "the pin diameter [was] sufficient to withstand the shear force exerted by the geogrid *if* the geogrid were hooked over the pins." Additionally, KeyStone proffered the deposition of Geir Seger, an engineer hired by the city of Eagan to review KeyStone's proposals, in which he stated that he did not know what system of attachment was to be used by KeyStone.

Our review of the record indicates that a genuine issue of material fact exists as to whether an embodiment of the claimed invention was offered for sale prior to the critical date. We are persuaded that KeyStone came forward with sufficient evidence to demonstrate a genuine issue for trial. Thus, we conclude that the court erred in granting summary judgment of invalidity of the '876 patent and we remand for further proceedings.

## CONCLUSION

We reverse the district court's order granting summary judgment of invalidity of the '876 patent under section 102(b) and we remand for further proceedings. We affirm the judgment in all other respects.

## COSTS

Each party shall bear its own costs.

AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED.