60 F.3d 840
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 ALAN TRACY, INC., Plaintiff-Appellee,
v.
TRANS GLOBE IMPORTS, INC. and Bel Air Lighting, Inc.,
Defendants-Appellants.
 Nos. 94-1205, 94-1381.
 United States Court of Appeals, Federal Circuit.
 June 2, 1995.
 
 Rehearing Denied; Suggestion
for Rehearing In Banc Declined
 July 13, 1995.
 Before ARCHER, Chief Judge, CLEVENGER, and SCHALL, Circuit Judges.
 DECISION
 SCHALL, Circuit Judge.
 
 
 1
 Trans Globe Imports, Inc., and its wholly owned subsidiary Bel Air Lighting, Inc. (collectively "Trans Globe"), appeal the February 9, 1994 final judgment of the United States District Court for the Southern District of Florida in favor of Alan Tracy, Inc. ("Tracy") in Docket No. 91-1337-CIV. Following a bench trial, the court held that two accused lens panels sold by Trans Globe infringed Tracy's U.S. Design Patent No. 312, 511 (the '511 patent), and that Trans Globe had infringed Tracy's trade dress under Section 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125(a). Based upon these holdings, the court granted Tracy a permanent injunction and other relief. We affirm-in-part, reverse-in-part, and remand.
 
 DISCUSSION
 I. Background
 
 2
 Tracy is the assignee of the '511 patent, which claims a lens panel for a lighting fixture, as shown and described therein. Tracy discovered that Trans Globe was selling lighting fixtures that Tracy believed included a lens panel that infringed the '511 patent. The accused lens panel was an elongate, semi-cylindrical, translucent structure having three grooves formed in a flat back surface. It had a straight central section and two shorter end sections, each bent at a ninety-degree angle with respect to the central section. Tracy filed the action appealed from here, claiming that the accused lens panel infringed the '511 patent and requesting a preliminary injunction, which the court granted.
 
 
 3
 After the preliminary injunction issued, Mark Ziv, the president of Trans Globe, designed a second semi-cylindrical lens panel having a single round groove formed in the center of the flat back surface, and two grooves formed in the rounded top surface on either side of the groove in the back surface. This lens panel also had a straight central section and two shorter end sections, each bent at a ninety-degree angle with respect to the central section. In due course, Tracy amended its complaint to allege that the second lens panel also infringed the '511 patent, and that both lens panels infringed Tracy's trade dress under Sec. 43(a) of the Lanham Act.
 
 
 4
 After trial, the district court held that the novel elements of the patented design were the combination of a semi-cylindrical body with three square grooves formed in, and extending longitudinally along, a flat back surface. The court rejected Trans Globe's contention that the '511 patent encompasses only a straight lens panel, because in the court's view the broken lines in the patent drawings could indicate either a curved or a straight intermediate portion. The court found "no significant distinction between the patent drawings and the acrylic embodiments submitted as Tracy's exhibits." Accordingly, relying upon Lee v. Dayton-Hudson Corp., 838 F.2d 1186, 1189, 5 USPQ2d 1625, 1627 (Fed. Cir. 1988), the court chose to compare an embodiment of Tracy's commercial lens panel directly with the first and second accused lens panels with the bent end sections.
 
 
 5
 In assessing whether the first accused lens panel infringed the '511 patent, the court "conducted a visual comparison between the embodiments of the patented lens panel ... and the first accused lens panel," and found that the panels were "almost identical." The court also viewed the panels, when attached to their respective light fixtures, in both the lit and unlit modes. Based on these observations, the court found that the first accused lens panel captured the ornamental effect of the patented invention by appropriating the novel elements that it concluded distinguished the Tracy design from the prior art, as required for a finding of design patent infringement under Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444, 221 USPQ 97, 109-110 (Fed. Cir. 1984). The court then compared the second accused lens panel with the embodiment of the patented design. After performing the same analysis as with the first accused lens panel, it found that the second accused lens panel also completely captured the ornamental effect created by the patented lens panel design. Regarding trade dress infringement, the district court found that Tracy's commercial lens panel is inherently distinctive because its physical configuration is uncommon and creates a distinctive visual impression. The court also found that the design is not merely functional, but also ornamental and decorative. The court concluded that the Tracy and Trans Globe lens panels were "almost identical in configuration and size." In addition, the court found credible the testimony of witnesses attesting to incidents of actual confusion between the patented design and the accused lens panels. After it had weighed other factors, including Trans Globe's intent in adopting the Tracy trade dress and the differences in the retail outlets and advertising media used by the parties, the court concluded that "the defendants' use of Tracy's trade dress creates a likelihood of confusion in the buying public." Finally, the court found that Mr. Ziv "intentionally set out to circumvent the [preliminary] injunction by designing the second accused lens panel" and that "such post-injunction actions were intentional and willful." In view of these and other findings of fact, the court held that both accused lens panels infringed the '511 patent, and that Trans Globe had infringed Tracy's trade dress under Section 43(a) of the Lanham Act.
 
 
 6
 The district court issued a permanent injunction against Trans Globe, awarded Tracy lost profits for design patent infringement under 35 U.S.C. Sec. 289 and for trade dress infringement under 15 U.S.C. Sec. 1117(a), and trebled the award for profits associated with the sale of post-preliminary-injunction lens panels. In addition, the court determined that because Trans Globe's post-injunction conduct was willful, the case was "so exceptional as to warrant an award of attorney's fees to Tracy under both the patent and trade dress statutory provisions," exclusive of the pre-injunction phase of the case. Finally, the court ordered Trans Globe to recall from its customers all infringing lens panels, and to surrender those lens panels and others in its possession to Tracy.
 
 II. Analysis
 A. Standard of Review
 
 7
 Trans Globe bears the burden of showing that the trial judge, in deciding questions of law, committed reversible legal error, or that the factual findings underlying its legal conclusions were clearly erroneous in light of the record made at trial. Medtronic, Inc. v. Daig Corp., 789 F.2d 903, 904-05, 229 USPQ 664, 666 (Fed. Cir.), cert. denied, 479 U.S. 931 (1986). The "clearly erroneous" standard is satisfied when this court is left with the firm conviction that error has been committed. Id. at 905, 229 USPQ at 666.
 
 B. Design Patent Infringement
 
 8
 A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent. Keystone Retaining Wall Systems, Inc. v. Westrock, Inc., 997 F.2d 1444, 1450, 27 USPQ2d 1297, 1302 (Fed. Cir. 1993). A design patent has almost no scope. In re Mann, 861 F.2d 1581, 1582, 8 USPQ2d 2030, 2031 (Fed. Cir. 1988). Determining infringement is a two-step process. The first step is to determine the meaning and scope of the patent claim asserted to be infringed. Markman v. Westview Instruments, Inc., F.3d , , 34 USPQ2d 1321, 1326 (Fed. Cir. 1995) (en banc). The second step is to compare the properly construed claim to the device accused of infringing the asserted claim. Id. We review each step in turn.
 
 
 9
 This court reviews claim construction, a question of law, de novo. Markman F.3d at , 34 USPQ2d at 1329. The '511 patent includes twenty-four drawings of elongate semi-cylindrical lens panels, each of which has a flat back surface and a rounded top surface. Three parallel rectangular channels are formed in and extend along the length of the back surface. In Figures 1 through 18, one end of the lens panel terminates with a square cut, and the other end of the panel terminates with an angled cut. In Figures 19 through 24, both ends of the panel terminate with an angled cut. All of the illustrated lens panels are straight, and some (Figures 14 and 18 through 24) are, in the words of the patent, "broken away to indicate indeterminate length."
 
 
 10
 Trans Globe argues that the '511 patent illustrates and describes only straight lens panels of varying length, not of varying shape. According to Trans Globe, neither of its accused lens panels is straight, and thus neither infringes the '511 patent. Tracy responds that the sections broken away in the patent drawings encompass both "straight and curved extensions of the disclosed design," and that a lens panel having a "U-shaped" central section (such as each of the accused lens panels) infringes the '511 patent.
 
 
 11
 Having reviewed the '511 patent, we conclude that the claim encompasses only straight lens panels. There is no support in the '511 patent for the proposition that Figures 14 and 18 through 24, which illustrate lens panels that are "broken away to indicate indeterminate length," disclose anything other than straight extensions of like geometrical shape. All of the remaining Figures show only straight lens panels, both in plan view and in sectional view. Because there is no disclosure in the '511 patent of any non-linear lens panel, we hold that the claim of the '511 patent is limited to straight lens panels. Thus, the district court erred as a matter of law when it construed the patented design as encompassing lens panels with bent ends.
 
 
 12
 Because the '511 patent claims only straight lens panels, the district court's holding that the accused lens panels, which are bent at each end, infringe that claim is clearly erroneous, because no ordinary observer could be induced into purchasing the accused (bent-ended) lens panel supposing it to be the patented (straight) lens panel. See Gorham Mfg. Co. v. White, 81 U.S. (14 Wall.) 511, 524-25 (1871). We therefore reverse the judgment of the district court holding that the accused lens panels infringe the claim of the '511 patent. Consequently, we also reverse the award of damages, prejudgment interest, and attorney fees for design patent infringement.
 
 C. Trade Dress Infringement
 
 13
 Tracy claims that Trans Globe's sale of the accused lens panels creates a likelihood of confusion between those devices and Tracy's lens panels, thereby infringing Tracy's trade dress under Section 43(a) of the Lanham Act. In reviewing claims of trade dress infringement under the Lanham Act, this court looks to the law of the regional circuit. Keystone, 997 F.2d at 1447-48.
 
 
 14
 Following 11th Circuit law, see AmBRIT Inc. v. Kraft Inc., 812 F.2d 1531, 1536, 1 USPQ2d 1161, 1166 (11th Cir. 1986), cert. denied, 481 U.S. 1041 (1987), the district court analyzed seven factors in determining whether there was a likelihood of confusion between the lens panels sold by Tracy and those sold by Trans Globe:
 
 
 15
 (1) strength of the trade dress;
 
 
 16
 (2) similarity of design;
 
 
 17
 (3) similarity of the product;
 
 
 18
 (4) similarity of retail outlets and purchasers;
 
 
 19
 (5) similarity of advertising media;
 
 
 20
 (6) defendant's intent; and
 
 
 21
 (7) actual confusion.
 
 
 22
 Following a bench trial, we review determinations of likelihood of confusion, a question of fact, under the clearly erroneous standard. AmBRIT, 812 F.2d at 1538; Wesco Mfg. v. Tropical Attractions of Palm Beach, 833 F.2d 1484, 1488 n.5, 5 USPQ2d 1190, 1193 n.5 (11th Cir. 1987). Having considered the evidence of record, we cannot say that the district court clearly erred in concluding that Alan Tracy had established trade dress rights and that there was a likelihood of confusion between the Tracy and Trans Globe lens panels. We therefore affirm the district court's judgment of trade dress infringement.
 
 D. Remedies
 
 23
 Trans Globe argues that the district court erred by basing its decision to award treble damages for trade dress infringement solely upon Trans Globe's actions following the preliminary injunction for design patent infringement, seventeen months before the trade dress claim was added to the case.[1] Tracy responds that the court had discretion to enhance the damage award, and that the court was within its discretion to treble damages for willful misconduct. The award of enhanced damages is discretionary with the trial court, see 15 U.S.C. Sec. 1117(a) (1988) ("the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."). We review an award of enhanced damages for abuse of discretion. See Wesco, 833 F.2d at 1488 n.5, 5 USPQ2d at 1193 n.5.
 
 
 24
 The district court explained its award of treble damages for trade dress infringement as follows:
 
 
 25
 Moreover, pursuant to section 1117(a), the Court finds that the circumstances of this case justify a trebled award for the profits realized in connection with the post-injunction [lens panels]. The Court has made a factual finding that the defendants' conduct after the issuance of the preliminary injunction was intentional and willful. In defense of the claim of wil[l]fulness, the defendants proffered to the Court a letter ... by their litigation counsel expressing the opinion that the second accused lens panel did not infringe Tracy's patent. The Court finds the letter woefully inadequate for this purpose.
 
 
 26
 Thus, the court based its award of treble profits on Trans Globe's actions following the issuance of the preliminary injunction. That injunction related to Tracy's only claim then existing in the case -- one for infringement of the '511 patent. In light of our holding that Trans Globe did not infringe the '511 patent, and because the district court awarded treble profits under the Lanham Act for actions undertaken in supposed violation of an injunction related solely to patent infringement, we hold that the award of treble profits for trade dress infringement was an abuse of discretion. We therefore reverse the award of treble damages for trade dress infringement, and with it the corresponding award of prejudgment interest, and remand for computation of actual damages under the Lanham Act.
 
 
 27
 Trans Globe claims that the attorney fees award for trade dress infringement should be reversed, because the court improperly based the award of attorney fees, as with the treble damage award, on a finding of willful infringement following the preliminary injunction. Tracy argues that the award of attorney fees for trade dress infringement is both permissible and appropriate here. We review an award of attorney fees for abuse of discretion. Wesco, 833 F.2d at 1488 n.5, 5 USPQ at 1193 n.5.
 
 
 28
 The court explained its award of attorney fees for trade dress infringement as follows:
 
 
 29
 [Fifteen] U.S.C. Sec. 1119(a) provides for an award of reasonable attorney fees to the prevailing party in exceptional cases.
 
 
 30
 The Court has found that the defendants' post-injunction conduct was willful. The Court further finds that such willfulness makes this case so exceptional as to warrant an award of attorneys fees to Tracy under both the patent and trade dress statutory provisions. The fees award, however, shall exclude the pre-injunction phase of the case. The Court shall also award to Tracy reasonable costs incurred in this action.
 
 
 31
 As with the award of treble profits under the Lanham Act discussed above, the court awarded attorney fees under the Lanham Act for actions taken by Trans Globe in supposed violation of the preliminary injunction that related only to patent infringement. We have held that there was no patent infringement. Accordingly, we reverse the award of attorney fees under the Lanham Act.
 
 
 32
 Finally, Trans Globe argues that the recall and surrender provisions of the court's order are unprecedented, and that the remaining relief afforded Tracy adequately protects its interests. Because the form of relief ordered by the district court is discretionary, we review the recall and surrender provisions of the court's order under an abuse of discretion standard. See Nikon Inc. v. Ikon Corp., 987 F.2d 91, 97, 25 USPQ2d 2021, 2027 (2d Cir. 1993) (district court has discretion to issue a recall order in connection with a permanent injunction).
 
 
 33
 According to the district court, the recall order insures that Trans Globe will comply with the permanent injunction by preventing its customers from selling any infringing lens panels already in stock. The lens panels sold to Trans Globe's customers already have earned a profit for Trans Globe, which profit the court has awarded to Tracy by the terms of the judgment, as modified by this opinion. We affirm the surrender order insofar as it relates to the lens panels currently in possession of Trans Globe's customers; provided, however, that Trans Globe is entitled to a credit toward the damage award with respect to each infringing lens panel that it surrenders to Tracy. To the extent that the surrender order relates to Trans Globe's remaining inventory, Trans Globe has not shown that it is an abuse of discretion, and we therefore affirm that portion of the surrender order as well.
 
 
 34
 In sum, for the foregoing reasons, we (i) affirm the judgment of trade dress infringement and leave in place the related permanent injunction; (ii) reverse the judgment of design patent-infringement and related damages; (iii) reverse the award of treble profits for trade dress infringement and remand for a determination of actual damages; (iv) reverse the award of attorney fees; and (v) affirm the recall and surrender order, subject to the modification for a credit noted above. The case is remanded to the district court for further proceedings consistent with this opinion.
 
 
 35
 Each party shall bear its own costs.
 
 
 
 [1]
 Because we agree with Trans Globe on this point, we do not reach its additional arguments for reversal of the award of treble damages for trade dress infringement