**James M. WELSH and Welsh Rock, Incorporated, Plaintiffs,**

v.

**ROCKMASTER EQUIPMENT MANUFACTURING, INC., Scott Hydraulics, Inc., Ray Jackson, Paul J. Scott, Spencer & Frank, and Jay M. Cantor, Defendants.**

**No. 1:96–CV–142.**

United States District Court,
E.D. Texas,
Beaumont Division.

March 26, 1999.

J. Hoke Peacock II, Orgain, Bell & Tucker, Beaumont, TX, Robert Gerard Neal, Jr., Hemphill, TX, for plaintiff.

Curtis William Fenley, Jr., Fenley & Bate, Lufkin, TX, Gerald Wayne Riedmueller, Benckenstein, Norvell & Nathan, Beaumont, TX, for defendants Rockmaster, Scott Hydraulics, Jackson, Scott.

Iris Hefter Robinson, Magenheim, Bateman, Robinson, Wrotenberry & Helfand, Houston, TX, for defendants Spencer & Frank and Jay Canator.

### MEMORANDUM OPINION

COBB, District Judge.

The plaintiffs, James M. Welsh and Welsh Rock, Incorporated, have now filed their Second Motion for Summary Judgment on all issues before the court. This motion was filed February 18, 1999, almost eleven months after the court's memorandum opinion of March 31, 1998, which granted Welsh's application for temporary injunction and held that United States Patent No. 5,471,139 (the "139 patent") was invalid by reason of the provisions of the "on sale bar" or "public use" bar. Prior to the March, 1998, holding, this court held a three-day hearing, made findings of fact and conclusions of law. The facts were exhaustively presented at that hearing.

In plaintiff's second motion for summary judgment,[1] plaintiffs seek summary judgment on all issues in their third amended original complaint. They seek a declaration on the invalidity, non-infringement, and unenforceability of the '139 patent (Count I) and recovery of money damages; Patent misuse (Count II); Breach of Contract (Count III), Violation of Texas Deceptive Trade Practices Act (Count IV); common law unfair competition (Count V), unjust enrichment (Count VI); constructive trust (Count VII); breach of duty and good faith and fair dealing (Count VIII); unfair competition, 15 U.S.C. § 1125(a)

(Count IX); Federal Trademark dilution (Count X); trademark dilution under Texas Business & Commerce Code § 16.29 (Count XI); fraud in the Patent Office (Count XII); conspiracy to commit such fraud (Count XIII).

Without a trial on the merits, most of these counts growing out of the disputes between the various parties cannot so easily or summarily be disposed of by plaintiffs' motion pending before the court. However, some matters can be disposed of by the court at this time, and such ruling will be of aid to the court and parties to define, identify, and narrow the issues remaining before proceeding to a trial (or trials) on the merits by granting partial summary judgment and ruling on that portion of the plaintiffs' complaint seeking a declaratory judgment.

28 U.S.C. § 2201 provides:

> ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

This court has jurisdiction of this dispute by reason of the complete diversity between the parties, 28 U.S.C. § 1332, and 28 U.S.C. § 1338(b) because this is a claim under the patent laws, 35 U.S.C. § 282 joined with an unfair competition claim. Additionally, subject matter jurisdiction exists under 28 U.S.C. § 1338(a) because this is a civil action arising under the United States Trademark Act, 15 U.S.C. § 1051 et seq., and relating to trademark infringement and unfair competition. Jurisdiction is also appropriate under the Declaratory Judgment Act, 28 U.S.C. § 2201.

■ Declaratory judgments can dispose of an entire controversy, or be of aid to the court in identifying, narrowing, and defining the issues and controversies remaining

---

1. The Plaintiff's first motion for summary judgment was filed prior to the hearing, and was supported only by affidavit and deposition evidence. The court did not have the benefit of all the testimony and exhibits presented at the injunction hearing.

between the parties as to any remaining claims before the court, or in determining whether permanent injunctive relief can be granted. Such is the case here.

### Validity of the Patent–Declaratory Judgment (Count I)

After a full hearing on the sale bar portion of this case, the court unequivocally held the patent to be invalid. Specifically, the court found that the patent is invalid because of the "on sale bar" or the "public use" doctrine. The applicable statute, 35 U.S.C. § 102, states:

A person shall be entitled to a patent unless—

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

In this case, the patent application was filed on May 25, 1993. Thus, the critical time and controlling question is whether the invention was "on sale" or in "public use" in this country before May 25, 1992.

### On Sale Bar

*Scope of the Patent*

■ In order to establish an on sale bar, the offered product must be shown to be the claimed invention, and this may be established by any relevant evidence, including memoranda, drawings, correspondence, and testimony of witnesses. *R.C.A. Corp.*, 887 F.2d at 1060. Defendants state that the product allegedly sold did not embody the claims of the '139 Patent since the invention disclosed in the '139 Patent is a system for crushing a wall of rock comprising a(a) a track hoe; (b) an articulating boom; and (c) a separate rotating rock cutter. Defendants argue that the invention embodied in the patent is a system containing three separate components.

Plaintiffs do not disagree that the components must work together as a system to achieve the desired result of mining glauconite in a commercially useful way. Plaintiffs, however, contend that the patent at issue in this case clearly did not contemplate for the invention to include a track hoe and boom already owned or acquired by the purchaser of the Rockmaster from another party, since the patent states that the cutter head should be suitable for use on any "well known" "standard" track hoe.

Both parties have proven the track hoe and the articulating boom were on sale before 1989. At that time, Welsh asked Ray Jackson of Scott Hydraulics to help him find and purchase a Mitsuimiike for use in his glauconite mine. Jackson was paid a consulting fee, and after locating one, Scott Hydraulics bought it, and then sold it and delivered it to Welsh. A track hoe and articulating boom nearly identical to the one used with the Rockmaster made up part of the Mitsuimiike machine. Additionally, all the invoices sent to Welsh by the Scott defendants listed the invention only as "the digger head." They never include a track hoe or articulating boom as part of the requested machine, nor did they ever provide them as part of the machine. Finally, the patent contemplated that any number of track hoes could be used with the digger head.

The track hoe and articulating boom used with the cutter head were not in any way new or attributable to the Scott Defendants. The helical rotating head to be installed upon the existing track hoe and boom is the only device that is in any manner a new "invention." Therefore, the patent could not have contemplated anything other than the Rockmaster "digger head as the embodiment of the thing for sale."

*Application of the "On Sale" Bar Doctrine*

■ Plaintiffs contend that every claim of the '139 Patent was invalid because a device incorporating the invention disclosed in the '139 Patent was sold by defendants to plaintiffs prior to May 25,

1992. The issue of whether an invention is subject to the on sale bar is a question of law. *Paragon Podiatry Lab., Inc. v. KLM Labs, Inc.* 984 F.2d 1182, 1186 (Fed.Cir. 1993). Plaintiffs have the "burden of proving that there was a definite sale or offer to sell more than one year before the application for the subject patent and that the subject matter of the sale or offer to sell fully anticipated the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art." *RCA Corp. v. Data Gen. Corp.*, 887 F.2d 1056, 1059 (Fed.Cir.1989), citing *UMC Elecs. Co. v. United States*, 816 F.2d 647, 656 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988) (citations omitted).

■ To determine whether there was a sale or offer of sale, the court must consider the totality of the circumstances surrounding the offer of sale. *See In re Brigance*, 792 F.2d 1103, 1107–08 (Fed.Cir. 1986). "A determination that an invention was on sale within the meaning of section 102(b) requires that 'the claimed invention asserted to be on sale was operable, the complete invention claimed was embodied in or obvious in view of the device offered for sale, and the sale or offer was primarily for profit rather than for experimental purposes.'" *KeyStone Retaining Wall Systems, Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1451 (Fed.Cir.1993). Therefore, plaintiffs, with the burden of proving the patent invalid, must show that the sales cannot be characterized as experimental use. Defendants do not deny that the Rockmaster was sold or "on sale," in the common usage of the term, prior to the critical date, but emphatically assert that their dealings with plaintiffs were solely for the purpose of experimenting with an perfecting the Rockmaster component.

■ To determine whether a use is experimental, a question of law, the totality of circumstances must be considered, including various objective indicia of experimentation surrounding the use. *Lough v. Brunswick Corp.*, 86 F.3d 1113, 1120 (Fed. Cir.1996). Such objective indicia include the number of prototypes and duration of testing, whether records of progress reports were made concerning the testing, existence of a secrecy agreement between the patentee an the party performing the testing, whether the patentee received compensation for the use of the invention, and the extent of the control the inventor maintains over the testing. *Id.*

■ Defendants contend that because the machines were constantly changing through various repairs and modifications, the sale the machine should be characterized as experimental use. Plaintiffs contend that, throughout the period from 1991 to 1993, the cutter head was utilized for the purpose of mining glauconite and not for the purpose of perfecting the invention. There were several changes and modifications made and different rotating drums developed to overcome problems discovered by Welsh in the use at his mining quarry. Welsh needed a machine which would be commercially useful for the purposes of producing glauconite in sufficient quantity and consistency. In order to accomplish these goals, the product would have to be durable enough and capable of operating close to twenty-four hours a day on a daily basis. As the machine developed various problems, it would be returned to Scott Hydraulics for repairs or modifications, and the mining would start once again.

Each repair, change, or modification was invoiced to Welsh, who paid Scott in full for the repairs and changes. The reverse of each invoice contained the language noted above which clearly established a seller/purchaser relationship between Scott and Welsh. The invoices did not purport to give Scott any right to test the machinery, nor did they absolve Scott from responsibility for defects as part of the natural process of experimentation of a new invention. No one at Scott Hydraulics ever initiated any changes, improvements,

or new designs. All such actions were suggested by Welsh.

No formal reports were made as to experimentation and progress reports form plaintiffs to defendants were at best infrequent, if not altogether non-existent. There are no documents nor testimony reflecting that Welsh had any obligation to report anything about any of the three Rockmaster cutter/digger heads that were sold to him before May 25, 1992, to either Scott Hydraulics, or Paul Scott individually.

Plaintiffs and defendants did not enter into a secrecy agreement, written or oral. Plaintiffs were not in any way restricted in how they used or tested the machine. To the contrary, plaintiffs allowed some non-parties on the quarry premises while the Rockmasters were being used. Defendants filmed the machine in use and sent copies of the film to potential buyers before the critical date. Therefore, it is clear that neither party contemplated their relationship to include a secrecy agreement.

Plaintiffs paid for the machines, indicating that at least three sales were made before May 25, 1992. In fact, Scott Hydraulics' invoices for the machines and all the service performed were captioned, "SOLD to Jimmy Welsh" or labeled the transaction a "lease/purchase." On the second and third machine Scott Hydraulics made a profit of nearly $20,000 per machine over and above the actual cost of producing the machine.

Lastly, Scott retained absolutely no control over the machines after they were returned to Welsh. Control is a heavily weighted factor and deserves extra attention. *See Lough, supra,* at 1120. There are no documents reflecting that there were any restrictions on plaintiffs' use of the three Rockmaster cutter/digger heads sold to them by Scott Hydraulics. Furthermore, Mr. Scott admitted that all uses of the machine were maintained under the control of plaintiffs. This admission was made in defendants' response to plaintiffs' motion for summary judgment, where de-

fendants stated that "[n]o one else [other than plaintiffs] utilized the machine and all uses were maintained in the control of plaintiffs (sic) property." Additionally, there is no evidence that any repairs were made at Scott's request. In fact, Scott testified that neither he nor anyone at Scott Hydraulics retained any control over the three machines sold to Welsh before May 25, 1992. AS the Federal Circuit stated in *Lough,* "[I]f the inventor has no control over the alleged experiments, he is not experimenting. If he does not inquire about the testing or receive reports concerning the results, similarly, he is not experimenting." 86 F.3d at 1120.

Defendants point out that the Federal Circuit has stated, "[t]he general rule is that the on sale bar starts to accrue when a completed invention is offered for sale." *Seal–Flex,* 98 F.3d at 1324, citing *Baker Oil Tools, Inc. v. Geo. Vann, Inc.,* 828 F.2d 1558, 1563 (Fed.Cir.1987). In other words, defendants argue that because the invention was neither complete nor known to work for its intended purpose when plaintiffs were using the Rockmaster machines, the use must be characterized as experimental use and any on sale bar contentions must be dismissed. *See UMC Elecs.,* 816 F.2d at 657.

The Scott defendants offered Rockmasters for sale to numerous third parties with the assurance that the first two machines were "performing for 18 months with minor repairs" and in "operation" and had "obtained the quality demanded by Paul." At the very bare minimum, the third Rockmaster machine, sold to Welsh on May 3, 1992, must be considered complete and known to work for its intended use. It was the final version offered for sale to other buyers and there is no evidence that any further modifications were made to insure that the machine was operable for its intended purpose. Furthermore, there is no evidence that the purpose of the transfer of the third machine from Scott to Welsh was for any reason

other than for Scott to make a sizable profit [2] and for Welsh to have an extra and improved component. Over the course of the first three years of their relationship until the critical date, the Scott defendants did not make any effort to insure that the machines were operable to serve their intended purposes, other than to make repairs and changes requested and paid for by Welsh.

Based on these findings, this court concludes that the Rockmaster was operable for its intended function prior to the critical date. It further concludes that the claimed invention was embodied in the Rockmaster digger head. Finally, it finds that the primary purpose for the sales and offers to sell the Rockmaster was for profit and not for experimentation. Therefore, this court concludes that the "on sale" bar applies to this case. *See Kolmes v. World Fibers Corp.*, 107 F.3d 1534, 1540 (Fed.Cir. 1997).

### Public Use Argument

■ Plaintiffs also argue that the patent violates § 102(b) because it was in the public domain more than one year prior to the date the patent application was filed. Public use has been defined as any use of that invention by a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor. *Grain Processing Corp. v. American–Maize Prods. Co.*, 840 F.2d 902, 906 (Fed.Cir.1988), citing *In Re Smith*, 714 F.2d 1127, 1134 (Fed.Cir.1983).

In the present case, one of the defendants, Mr. Scott, was named as the inventor of the patent. Defendants admitted in testimony that once the cutter heads were turned over to Welsh, they had no control over the components and never placed any restrictions or limitations on his use of the machines. There is no evidence that Welsh had any duty to report back to the Scott defendants or to use the machine in a limited or restricted way. Welsh used

the cutter heads in his quarry to mine glauconite free and clear of any restrictions. Furthermore, there was no secrecy agreement between any of the parties, written or oral. In fact, the use of the machine was somewhat open to public view. While Welsh admitted to not allowing competitors to inure to the benefit of observing his brainchild at work, Welsh did suggest that third parties actually saw the machine at work in his quarry before the critical date of May 25, 1992. Defendants even sent copies of a videotape of the machine at work to potential buyers prior to the critical date.

■ It is clear that Welsh's use of the Rockmaster in his quarry qualifies as public use under the definition given by the Federal Circuit in *Grain Processing, supra*. The Federal Circuit, however, also has stated, "If a use is experimental, it is not, as a matter of law, a public use within the meaning of section 102." *Lough, supra*, at 1120. The test for experimental use in "public use" cases is identical to the one used in "on sale" bar cases. Defendants contend that the alleged public use was for experimentation.

In light of this court's findings and conclusions in its previous memorandum opinion, defendants' argument is not persuasive. No secrecy agreement existed; no records or progress reports were made concerning the experimentation; Paul Scott, the patentee and named inventor, richly profited form the sale; and Scott retained no control over the machine after the sale. Based on these facts, this court concludes the Rockmaster machine was in public use prior to the critical date of May 25, 1992.

### Patent is Invalid

Plaintiffs have clearly established that the Rockmaster was on sale and in public use for well in excess of one year before Scott applied for a patent on May 25, 1993.

---

**2.** Scott Hydraulics built the first machine at a cost of $47,190. Scott charged Welsh $65,-000 for the third model, the same price for

which it was offered to outside buyers. Scott was clearly motivated by profit and showed no interest in the testing of the machines.

35 U.S.C. § 102 therefore invalidates the '139 patent.

For these reasons the relief sought by plaintiffs in Count I is appropriate at this time. Plaintiffs' motion for summary judgment on the remaining Counts cannot be granted absent a trial, and therefore the plaintiff's second motion for summary judgment as to Counts II through III will be denied at this time..

Based on the facts, this court holds that the "on sale" bar and the "public use" bar apply to the '139 Patent. Therefore, the '139 patent is declared invalid, and the plaintiff's motion for summary judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201 will be entered.